[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10019
Non-Argument Calendar
_____

Agency No. A206-312-078

JHENSY ROSMERY PENA-NOLASCO,
DOUGLAS FRANCISCO LOPEZ-PENA,
JHENSY JUDITH LOPEZ-PENA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 30, 2020)

Before NEWSOM, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Jhensy Pena-Nolasco, her son Douglas Lopez-Pena, and her daughter Jhensy Lopez-Pena seek review of a Board of Immigration Appeals ("BIA") decision affirming the immigration judge's denial of Pena-Nolasco's request for asylum under Section 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158 (2018); withholding of removal under 8 U.S.C. § 1231(b)(3); and protection under the Convention Against Torture ("CAT"), 8 C.F.R. § 208.16(c). The BIA affirmed the immigration judge's decision on the grounds that Pena-Nolasco had failed to establish (1) past persecution on account of membership in a protected group, (2) a well-founded fear of future persecution, and (3) that the Honduran government is unable or unwilling to protect her or that the immigration judge erred when it found that she could avoid persecution by relocating within Honduras. Pena-Nolasco petitioned this Court for review. Because substantial evidence supports the BIA's decision, we deny the petition for review.

## BACKGROUND

Petitioners in this case are a mother, son, and daughter, all of whom are natives and citizens of Honduras. Lead Petitioner Pena-Nolasco and her son Douglas entered the United States together without inspection on November 2, 2013, and were placed in removal proceedings shortly after arrival. Her daughter Jhensy entered without inspection on or about January 15, 2014. Shortly after Jhensy arrived, she was placed in removal proceedings, and her case was consolidated with that of her mother and

brother. Pena-Nolasco submitted an application for asylum on November 5, 2014. She listed her son and daughter as derivatives to her asylum claim and indicated that she sought protection on account of her membership in a family-based particular social group. She filed an updated application on February 1, 2018, containing support for her withholding of removal and CAT claims.

Pena-Nolasco testified that she was born in Honduras in the municipality of San Francisco de Ojuera, Department of Santa Barbara. She married her husband, Francisco Lopez, in 2010 and moved to his hometown of San Pedro Sula in the Rivera Hernandez neighborhood, where his extended family lived. Her husband's brother, Cristian Cecilio Lopez, was a neighborhood leader in the MS-13 gang there. Cecilio sold drugs and firearms, extorted local businesses, and defended MS-13 operations from interference by rival gangs. At one point, Cecilio himself killed the brother of a member of a rival gang known as Mara 18. Pena-Nolasco testified that in response to that killing, members of Mara 18 sought revenge. She testified that members of Mara 18 killed her son, Cristian Lopez, and that from that point onward her family received death threats over the phone and in writing demanding that they leave San Pedro Sula or be killed as well. Pena-Nolasco claimed that these threats were similar to ones received by other relatives before they had been murdered. She attributes several family members' deaths to Mara 18, including the murders of

3

several of her husband's cousins, two of her husband's brothers (including Cecilio), and her husband's uncle.

Pena-Nolasco explained that since the harassment by Mara 18 began, she and her family have relocated several times. After her first relative was killed, Pena-Nolasco moved from San Pedro Sula to Santa Barbara, approximately three hours away. After two months, she and her family returned to San Pedro Sula "thinking things were going to be back to normal." After her son Cristian was killed, she and her family decided to relocate to San Francisco de Ojuera. Pena-Nolasco testified that her family did not receive any direct threats while living in San Francisco de Ojuera. However, a few days after the move, neighbors from San Pedro Sula came to their new home and told them that several men on motorcycles had appeared in their old neighborhood asking for their whereabouts. Afterwards, Pena-Nolasco and her husband decided that it was necessary to leave Honduras. Her husband sold his business and sent her and their son to the United States, with their daughter following soon after.

The immigration judge issued an oral decision denying Pena-Nolasco's applications for asylum, withholding of removal, and CAT relief. The judge ruled that Pena-Nolasco had: (1) failed to provide reasonably available corroborating evidence to support her claims; (2) failed to timely file her asylum application; (3) failed to show that she had suffered harm in Honduras rising to the level of

4

"persecution"; (4) not shown that she was threatened by the government or a group the government was "unable or unwilling" to control; (5) not established a nexus between the threats she received and a statutorily protected ground—race, religion, nationality, membership in a particular social group, or political opinion; (6) not established a well-founded fear of future persecution that was objectively reasonable; and finally (7) failed to show that a public official would acquiesce to any harm she might face in Honduras necessary to prevail on her request for CAT protection.

Pena-Nolasco appealed the immigration judge's decision to the BIA. As an initial matter, the Board held that consideration of the timeliness of Pena-Nolasco's application was unnecessary because her application failed on the merits. It affirmed the immigration judge's decision for three main reasons, concluding that Pena-Nolasco had (1) not established past persecution because she did not present evidence that she was personally harmed by her alleged persecutors; (2) not shown a well-founded fear of future persecution in Honduras on account of her membership in a particular social group—or that any of her six proposed particular social groups, all based on family relations—were cognizable under the INA; and (3) not shown that the Honduran government is unable or unwilling to prevent private actors from harming her or that the immigration judge clearly erred by finding that Pena-Nolasco could avoid persecution or future threats by relocating within Honduras.

**STANDARD OF REVIEW**

We review the BIA's legal conclusions *de novo*, *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019) (citation omitted), and its factual findings under the "highly deferential substantial evidence test," *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc) (citation omitted). Under that test, the BIA's factual findings "are conclusive unless the record demonstrates that 'any reasonable adjudicator would be compelled to conclude the contrary.'" *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002) (quoting 8 U.S.C. § 1252(b)(4)(B)). We will affirm the BIA's decision if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1286 (11th Cir. 2020) (citation omitted). When the record "could support or contradict the conclusion of the BIA, we must affirm its decision." *Recinos v. U.S. Att'y Gen.*, 566 F.3d 965, 967 (11th Cir. 2009) (citation omitted).

**DISCUSSION**

On appeal, Pena-Nolasco challenges each of the several grounds relied upon by the immigration judge in denying her request for relief. We limit our review to the decision of the BIA and "the decision of the Immigration Judge to the extent that the [BIA] expressly adopted the opinion of the Immigration Judge." *Kazemzadeh v.*

6

*U.S. Att'y. Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009) (citing *Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1344 (11th Cir. 2008).

## I.

The BIA did not address whether Pena-Nolasco's asylum application was timely filed, concluding that consideration of that issue was "unnecessary because . . . the respondent has not met her burden to establish that she is eligible for asylum on the merits." Because the BIA did not consider the timeliness of Pena-Nolasco's application, that issue is not before us on appeal. Instead, we review the BIA's consideration of the merits of Pena-Nolasco's application.

On the merits, substantial evidence supports the BIA's finding that Pena-Nolasco did not establish past persecution. Where, as here, an applicant alleges persecution by a private actor, she must prove that she is "unable to avail [her]self of the protection of [her] home country." *Sama v. U.S. Att'y Gen.*, 887 F.3d 1225, 1234 (11th Cir. 2018) (citation omitted). In such cases, failure to seek protection by reporting alleged persecution to local authorities is "generally fatal to an asylum claim." *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007) (citing *Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1327 (11th Cir. 2001)). However, this failure is excused where the applicant convincingly demonstrates the futility of seeking assistance from those authorities because they would have been unable or unwilling to protect her. *Id.*

Pena-Nolasco cannot establish past persecution because she cannot demonstrate that she availed herself of the protection of Honduran authorities, or alternatively that it would have been futile to do so. First, she provided no evidence that she filed a police report or made any effort to avail herself of local authorities while in Honduras. She testified that she did not start receiving threats until her son was killed in 2013. She also testified that she did not contact the authorities immediately after her son was killed. Instead, she waited until she was already in the United States. Second, the record indicates that while gang violence is prevalent in Honduras, the Honduran government is making efforts to curb such violence and improve the effectiveness of law enforcement. Other members of Pena-Nolasco's family have remained in Honduras since 2010, when Cecilio killed a member of Mara 18. And when Pena-Nolasco finally contacted the Honduran police from the United States to report her son's death, the police recorded her statement. Accordingly, the record in this case does not compel reversal of the BIA's determination that Pena-Nolasco failed to establish past persecution.

Substantial evidence also supports the BIA's finding that Pena-Nolasco did not establish a well-founded fear of future persecution on account of a protected ground. Where an asylum applicant has not established past persecution, the burden is on her to demonstrate a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(2). An applicant does not have a well-founded fear of prosecution if she

could avoid persecution by relocating to another part of her home country, provided that it would be reasonable to do so. 8 C.F.R. § 1208.13(b)(2)(ii); *see also Arboleda v. U.S. Att'y Gen.*, 434 F.3d 1220, 1223–24 (11th Cir. 2006) (noting that we have upheld the imposition of a "country-wide" requirement).

During her testimony, Pena-Nolasco admitted that she was able to find safety when she left her husband's neighborhood in San Pedro Sula for her hometown of San Francisco de Ojuera. The government sought to clarify this point at the merits hearing, asking: "And you didn't receive threats from the gang when you were living in your hometown. Is that correct?" Pena-Nolasco replied "Yes." Although Pena-Nolasco now argues that men on motorcycles came to San Francisco de Ojuera and asked her neighbors for her whereabouts, her declaration states that the men on motorcycles appeared in a town she had recently departed. She testified that "[a] few days later living in San Francisco de Ojuera, the residents of the town *that we previously lived*, had gone to the new place *where we now lived* and told us that many men on motorcycles were asking the neighbors about us." (emphasis added). Consequently, the record does not compel reversal of the BIA's determination that it would be possible for Pena-Nolasco to safely relocate within Honduras.

Because the BIA's affirmance of the immigration judge's past-persecution and relocation findings alone are adequate bases for denying Pena-Nolasco's asylum

claim, we need not consider the other grounds relied on by the immigration judge and affirmed by the BIA.

## II.

A claim for withholding of removal requires Pena-Nolasco to meet a higher standard of proof than an asylum claim. Under the withholding of removal provision of the INA, she must first show that her "life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). She must then demonstrate that it is "'more likely than not' she will be persecuted or tortured upon being returned to her country." *Sepulveda v. U.S. Att'y. Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005) (citing *Fahim*, 278 F.3d at 1218). Because substantial evidence supports the BIA's determination that Pena-Nolasco failed to meet the lower standard of proof for asylum, it necessarily follows that she also failed to meet the more stringent standard for withholding of removal. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1249 n.3 (11th Cir. 2006) ("[I]t is axiomatic that where an applicant fails to meet the burden for asylum, he necessarily cannot meet the more stringent burden for withholding of removal." (citations omitted)); *Forgue v. U.S. Att'y. Gen.*, 401 F.3d 1282, 1288 n.4 (11th Cir. 2005) ("Because [the applicant] has failed to establish a claim of asylum on the merits, he necessarily fails to establish eligibility for withholding of removal or protection under CAT." (citation omitted)).

### III.

Pena-Nolasco's request for CAT relief fails for the same reason. An applicant seeking protection under CAT must likewise show that she would "more likely than not" be tortured if removed to her proposed country of removal. 8 C.F.R. § 208.16(c)(2). Because substantial evidence supports the BIA's determination that she has failed to meet the lower standard of proof for asylum, she necessarily fails to establish eligibility for protection under CAT. *Forgue*, 401 F.3d at 1288 n.4.

### CONCLUSION

For the foregoing reasons, Pena-Nolasco's petition for review is **DENIED**.

11